IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PENNMONT SECURITIES, : | |
| : | CIVIL ACTION |
| Plaintiff, : | |
| : | |
| v. : | |
| : | NO. 08-2671 |
| JOHN WALLACE, et al., : | |
| : | |
| Defendants. : | |

**MEMORANDUM**

BUCKWALTER, S. J.                                                                                           September 16, 2008

      Currently pending before the Court is Defendants Philadelphia Stock Exchange, Inc. (d/b/a/ NASDAQ OMX PHLX) (the "Exchange" or "PHLX"), Meyer [Sandy] Frucher and John Wallace's Motion to Dismiss Plaintiff's Complaint, the Response of Plaintiff PennMont Securities ("PennMont") and Defendants' Reply Brief.  In addition, Plaintiff has filed a Motion for a Temporary Restraining Order and a Preliminary Injunction, to which Defendants have responded an Plaintiff has submitted a Reply.  For the following reasons, the Court will grant the Motion to Dismiss and deny the Motion for a Temporary Restraining Order.

**I.      FACTUAL BACKGROUND**

      Via an action filed on April 19, 2006, Plaintiff brought securities fraud claims under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and Rule 10b-5, 17 C.F.R. § 240.10b-5, against several of the named Defendants herein (the "Wallace Case").  Plaintiff alleged insider trading, wrongful provision of insider information and securities fraud resulting from false and misleading statements that depressed the price of PHLX stock.  On March 26, 2008, this Court

granted summary judgment on all counts and in favor of all defendants.  PennMont Secs. v. Wallace, Civ. A. No. 06-1646, 2008 WL 834379 (E.D. Pa. Mar. 26, 2008).

On July 14, 2008, pursuant to Philadelphia Stock Exchange Rule 651, Defendant PHLX presented Plaintiff with a bill for its costs incurred in defending the Wallace Case.  (Compl. ¶ 19.)  Under Rule 651, which PHLX adopted in 2004 through a public rulemaking process:

> Any member, member organization, foreign currency options participant, foreign currency options participant organization, or person associated with any of the foregoing who fails to prevail in a lawsuit or other legal proceeding instituted by such person or entity against the Exchange or any of its board members, officers, committee members, employees, or agents, and related to the business of the Exchange, shall pay to the Exchange all reasonable expenses, including attorneys' fees, incurred by the Exchange in the defense of such proceeding, but only in the event that such expenses exceed $50,000.00. This provision shall not apply to disciplinary actions by the Exchange, to administrative appeals of Exchange actions or in any specific instance where the Board has granted a waiver of this provision.

Notice of Filing and Immediate Effectiveness of Proposed Rule Change Relating to Legal Fees Incurred by the Exchange, SEC Rel. No. 34-50159, 83 S.E.C. Docket 1528, 2004 WL 2049378, at *1 (Aug. 5, 2004).   Pursuant to this Rule, Exchange members and other participants who bring unsuccessful litigation against the Exchange or its Board must reimburse the Exchange's reasonable defense costs when those costs exceed $50,000.  Id.  The bill submitted by PHLX sought legal fees and costs in the amount of $213,338.34.  (Compl. ¶ 20.)

On June 7, 2008, Plaintiff filed the instant action seeking a declaration that PHLX is precluded, on several grounds, from asserting a claim under Exchange Rule 651 in connection with the Wallace case.  (Id. ¶ 21.)  First, the Complaint contends that Rule 651 is facially invalid for four reasons:  (1) the authority to engage in rule making delegated to the PHLX, as a self-regulatory organization ("SRO") under the Securities and Exchange Act (the "Act"), 15 U.S.C. § 78d, does not extend to the civil action in issue; (2) actions brought under Section 10(b) of the Act and Rule 10b-5

2

promulgated thereunder are governed by specific legislation and Supreme Court rulings that SRO rule making, such as PHLX Rule 651, cannot amend or override; (3) Section 29 of the Act bars the PHLX from enacting a rule that would impede the prosecution of a claim arising under the Act; and (4) Section 28(a) of the Act, which provides that "the rights and remedies provided by this chapter shall be in addition to any and all other rights and remedies that may exist at law or in equity," bars the PHLX from enacting a rule that would impede the prosecution of a claim arising under the Act. (Id. ¶ 21(a)-(d).)  The Complaint goes on to offer the alternative arguments that, even assuming that Rule 651 is facially valid, (1) the manner in which PHLX is attempting to pursue a claim under Rule 651 violates Plaintiff's due process and (2) PHLX's claim under Rule 651 is barred since it was not brought as a compulsory counterclaim and, as such, is now precluded by *res judicata*. (Id. ¶ 21(e-g).)

PHLX treated this Complaint as a formal protest to the Rule 651 fee-shifting, which, pursuant to the procedures prescribed by the Exchange's by-laws, would be considered by a preexisting Special Committee to Review Delinquencies and Payments. (Letter from Stephen J. Kastenberg, Aug. 15, 2008, at 2.) This Committee is comprised of three non-management members of the Exchange's Board of Governors. Id. An administrative hearing has not yet been scheduled, but a briefing schedule is in place. (Id.; Defs.' Mem. Supp. Mot. to Dismiss, Ex. A.)

On August 5, 2008, Defendants filed the present Motion to Dismiss the entirety of Plaintiff's Complaint. Plaintiff responded and, in addition, filed a Motion for this Court to Issue a Temporary Restraining Order and Preliminary Injunction, pursuant to the All Writs Act, 28 U.S.C. § 1651. In this latter Motion, Plaintiff asks the Court to issue an injunction staying the PHLX's attempt to institute parallel "administrative" proceedings under Rule 651 until the conclusion of the matter currently pending before this Court. The Court now addresses each of these motions in turn.

## II.   DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendants' motion to dismiss rests on multiple alternative grounds.  First, Defendants claim that the doctrine of collateral estoppel precludes further litigation of Plaintiff's action.  Second, they assert that they have absolute immunity from lawsuits challenging the application of Exchange Rule 651.  Third, they dispute Plaintiff's ability to bring a private right of action against PHLX for alleged violations of Rule 651.  Finally, they aver that Plaintiff's Complaint fails on its merits.  As the Court finds that the collateral estoppel argument forecloses any further claims by Plaintiff, we limit our discussion to that argument.

### A.   Standard of Review for Motion to Dismiss

The purpose of a Fed. R. Civ. P. 12(b)(6) motion is to test the legal sufficiency of a complaint.  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6); see also Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005).  The question before the court is not whether the plaintiff will ultimately prevail.  Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984).  Rather, the court should only grant a 12(b)(6) motion if "it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Id. (citing Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957)).  When considering such a motion to dismiss, the court must "accept as true allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the nonmoving party."  Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989).  Notably, though, the court will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).

B.      **Collateral Estoppel**

Defendants' primary argument asserts that Plaintiff's entire action is barred by the principles of collateral estoppel. Specifically, Defendants emphasize that, earlier this year, PennMont brought a virtually identical complaint, which Judge Brody, of this District, rejected on the grounds of absolute immunity. PennMont Secs. v. Frucher, 534 F. Supp. 2d 538, 542 (E.D. Pa. 2008) (PennMont I). Defendants contend that Judge Brody's ruling is entitled to preclusive effect.

The Court's analysis of this legal argument necessarily begins with a more extensive discussion of the allegedly preclusive case. In PennMont I, the plaintiff, PennMont Securities, sought a declaration that Rule 651 was invalid as to claims against shareholders bringing shareholder suits. Id. at 540. It argued that Exchange Rule 651 was not properly enacted, does not apply retroactively and fails to provide a meaningful opportunity for an unsuccessful member-litigant to contest the amount billed. Id. The PHLX responded with a claim of absolute immunity from such suits. Id. at 541. Thereafter, PennMont moved for a temporary restraining order and preliminary injunction to enjoin further administrative action pending disposition of the matter before the federal court. Id. at 540.

On consideration of this motion, Judge Brody framed the issue as "whether PHLX's attempt to enforce Rule 651 constitutes action taken pursuant to its regulatory authority" or, put another way, "whether PHLX's attempt to enforce Rule 651 is consistent with the purposes of the Exchange Act." Id. at 541. In doing so, the court commented that "[o]ne enumerated goal of the Exchange Act is for an SRO [self-regulatory organization] 'to provide for the equitable allocation of reasonable dues, fees, and other charges among [the SRO's] members and issuers and other persons using [the SRO's] facilities.'" Id. Consistent with the Exchange Act, the fundamental purpose underlying Rule 651 is to permit membership dues that would otherwise be used to defend the suit,

to be used instead for exchange-wide activities that benefit all members.  Id. (quoting 15 U.S.C. § 78f(b)(4).)  The Securities Exchange Commission ("SEC"), which has been charged with enforcing the Exchange Act, has found that such fee-shifting provisions, including those substantively identical to Rule 651, are equitable within the meaning of the Exchange Act where "(1) unsuccessful member litigants only pay the exchange's legal costs if they exceed $50,000, and (2) fee-shifting does not apply to internal exchange disciplinary proceedings" – both of which criteria are incorporated within Rule 651.  Id. at 541-42.[1]  The court further noted that the SEC had, at no time, deemed Rule 651 inconsistent with the Exchange Act.  Id. at 541.

Addressing PennMont's arguments that (1) PHLX acted maliciously in seeking to enforce Rule 651; (2) Rule 651 was improperly enacted under the rulemaking procedures of the SEC; and (3) Rule 651 violates the Constitution, the court deemed such claims irrelevant to determining whether enforcement of the Rule furthers the purposes of the Exchange Act.  Id. at 542.

---

[1] The Court cited to several SEC Releases approving fee-shifting provisions similar to Exchange Rule 651.  Id.  (citing Self-Regulatory Organizations; Order Granting Approval to Proposed Rule Change by the Pacific Stock Exchange, Inc., Relating to the Liability of the Exchange and its Governors, Officers and Agents, S.E.C. Release No. 37563, 62 S.E.C. Docket 1527, 1996 WL 466637, at *3-4 (Aug. 14, 1996); Self-Regulatory Organizations; Order Granting Approval to Proposed Rule Change by the Chicago Board Options Exchange, Inc., Relating to the Liability of the Exchange and its Directors, Officers, Employees, and Agents, Precluding Certain Types of Legal Actions by Members Against Such Persons, and Requiring Members to Pay the Exchange's Costs of Litigation Under Specified Circumstances, S.E.C. Release No. 37421, 62 S.E.C. Docket 824, 1996 WL 390709, at *3-4 (Jul 11, 1996); Self-regulatory Organizations; Midwest Clearing Corporation and Midwest Securities Trust Company; Notice of Amendments and Order Approving on an Accelerated Basis Proposed Rule Changes Establishing a Risk Assessment Committee and Making Various Other Changes to MCC's and MSTC's By-laws and Rules, S.E.C. Release No. 34780, 57 S.E.C. Docket 1910, 1994 WL 559143, at *3 (Oct. 3, 1994); Self-regulatory Organizations; Chicago Stock Exchange, Inc.; Order Granting Approval to Proposed Rule Change and Notice of and Order Granting Accelerated Approval to Amendments 3,4,5 and 6 to Proposed Rule Change to Define Members' Rights and Obligations More Precisely, S.E.C. Release No. 34505, 57 S.E.C. Docket 862, 1994 WL 440909, at *5 (Aug. 9, 1994)).

Accordingly, it held that because the application of Rule 651 to PennMont was consistent with the goals of the Exchange Act, such application constituted action taken pursuant to the scope of PHLX's regulatory authority. Id.  The court then noted the well-established principle that an SRO's decision to apply or not apply an internal rule governing the conduct of its members "constitutes an exercise of delegated regulatory power and therefore cannot serve as the basis for a private civil suit in a district court."  Id. (citing cases).  Because PennMont's claim was premised entirely on PHLX's exercise of its regulatory power, the doctrine of absolute immunity compelled the court to deny PennMont's motion for a preliminary injunction and dismiss PennMont's complaint for declaratory relief on the merits under Federal Rule of Civil Procedure 12(b)(6). Id.

In light of the comprehensiveness of the PennMont I opinion, this Court finds that collateral estoppel unequivocally operates to preclude to the current lawsuit.  "As commonly explained, the doctrine of collateral estoppel can apply to preclude relitigation of both issues of law and issues of fact if those issues were conclusively determined in a prior action."  U.S. v. Stauffer Chem. Co., 464 U.S. 165, 170-71, 104 S. Ct. 575, 578 (1984).  The Third Circuit has identified four required elements for the application of collateral estoppel:  "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action."  Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc., 458 F.3d 244, 249 (3d Cir. 2006) (internal quotations omitted), cert. denied, 127 S. Ct. 1878 (2007).  The Third Circuit has also considered whether the party being precluded "had a full and fair opportunity to litigate the issue in question in the prior action, . . . and whether the issue was determined by a final and valid judgment."  Id. (internal quotation marks and citations omitted).

Each of these elements is present in this case. First, the key issues before the Court, as framed by Plaintiff, are whether PHLX Rule 651 can be used to obtain attorneys' fees following a civil action brought under Section 10(b) of the Securities Exchange Act of 1934, and, if so, whether that request for attorneys' fees must be heard by the same district court that tried the relevant civil action under Section 10(b). (Pl.'s Mem. Supp. Mot. for TRO and Prelim. Inj. 2.) Judge Brody expressly considered and rejected those same arguments in PennMont I. Id. at 542 (noting that PHLX's attempt to enforce Rule 651 is consistent with the purposes of the Exchange Act and the enforcement of that rule cannot serve as the basis of a private civil suit in a district court). Second, the issues were fully briefed and actually litigated by the parties during the pendency of PennMont's motion for preliminary injunction in PennMont I.[2] Third, the relevant determination by the PennMont I court was, in fact, necessary to the decision. The court dismissed PennMont's declaratory judgment action, seeking to preclude the PHLX from enforcing the fee-shifting provisions of Rule 651, on the sole ground of PHLX's absolute immunity from such claims. Fourth, as the lone plaintiff in PennMont I, PennMont was fully represented under the direction of counsel. Finally, it remains undisputed that PennMont had a full and fair opportunity to litigate these issues and the issues were determined by a valid and final judgment, which ultimately disposed of the

---

[2] Indeed, as noted by Defendants, PennMont had more than ample opportunity to litigate the immunity issue in PennMont I, as it was raised by the defendants on three occasions: (1) their opposition to PennMont's request for an injunction against the Rule 651 invoice, (Resp. to Mot. Prelim. Inj., PennMont I, Civ. A. No. 07-5543 (E.D. Pa. Jan. 9, 2008)); (2) their opposition to PennMont's emergency motion for an injunction staying its suspension for nonpayment of the invoice, (Resp. to Emerg. Mot. to Stay Pending Appeal, PennMont I, Civ. A. No. 07-5543 (E.D. Pa. Feb. 14, 2008)); and (3) their opposition to PennMont's emergency motion for stay pending appeal to the Third Circuit. (Resp. to Emerg. Mot. in Court of Appeals, PennMont Secs. v. Frucher, Civ. A. No. 08-1476, (3d Cir. Mar. 7, 2008). Each of PennMont's motions were denied.

entire case.[3]

Plaintiff's cursory response to Defendant's collateral estoppel argument is unconvincing and, thus, unavailing. In its entirety, Plaintiff's argument consists of the following statement:

> The basis upon which Defendants urge this Court to apply collateral estoppel to the case at bar is "the issue of the Exchange's absolute immunity from suits challenging its application of Rule 651 to recover costs incurred in defending a member's unsuccessful lawsuit was actually litigated before Judge Brody and previously adjudicated by her." But absolute immunity is not at all in issue herein. More importantly, Judge Brody did not consider, nor rule upon, whether Rule 651 conflicts with, or is precluded by, the various provisions of the Exchange Act: Sections 10(b) and 29, and the Private Securities Litigation Reform Act. Since these matters were never litigated nor adjudicated, collateral estoppel is not applicable to Plaintiff's claims.

(Pl.'s Mem. Opp Mot. to Dismiss 4-5.)

Plaintiff's initial contention that absolute immunity is not at issue in this case fails at its core. In their Motion to Dismiss, Defendants claim a complete defense to all claims raised by Plaintiff's Complaint on the grounds of absolute immunity,[4] thereby rendering it a crucial issue in this litigation. (Defs.' Mem. Supp. Mot. to Dismiss 8-11.) To the extent that Plaintiff claims that Judge Brody did not consider or rule upon whether Rule 651 conflicts with or its precluded by either various provisions of the Exchange Act or the Private Litigation Reform Act, its argument is likewise misplaced. Judge Brody expressly stated that PHLX's application of Rule 651 to PennMont was consistent with the goals of the Exchange Act; whether it violated the rulemaking

---

[3] Notably, the PennMont I case currently has a pending appeal to the Third Circuit. "The finality of a judgment, and therefore its preclusive effect, however, is not affected by a pending appeal." First Options of Chicago, Inc. v. Kaplan, 913 F. Supp. 377, 382 n.7 (E.D. Pa. 1996).

[4] Plaintiff baldly states that immunity is a defense only to a claim of money damages and has no application to suit for declaratory relief. (Pl.'s Mem. Opp. Mot. to Dismiss 5.) Absent a citation to some legal authority supporting that proposition, the Court declines to consider it.

9

procedures of the SEC was not relevant.  PennMont, 534 F. Supp. 2d at 542.  Such a statement clearly subsumes any argument by Plaintiff that Rule 651 conflicts with any provisions of the Exchange Act.[5]

In short, Plaintiff has had ample opportunity to present its position opposing the application of Exchange Rule 651 to this Court.  Simply because Plaintiff was dissatisfied with the outcome of that litigation does not automatically entitle it to a second bite at the apple.  In light of the fact that

---

[5]  Although it is not clear that Judge Brody expressly ruled on Plaintiff's claim that Rule 651 directly conflicts with and frustrate's Congress's intention, as set forth in the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 109 Stat. 737, 15 U.S.C. § 78u-4(b), to encourage private actions under the federal securities law, the Court finds such a claim to be meritless.  The PSLRA sets forth the standard of pleading and the proper venue for certain types of securities litigation.  Id.  In addition, it enumerates the circumstances under which a defendant may receive sanctions from a plaintiff for improper filings.  In Tellabs, Inc. v. Makor Issues & Rights, Ltd., the United States Supreme Court defined the purpose behind this Act as follows:

> This Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission (SEC). . . . Private securities fraud actions, however, if not adequately contained, can be employed abusively to impose substantial costs on companies and individuals whose conduct conforms to the law. . . . As a check against abusive litigation by private parties, Congress enacted the Private Securities Litigation Reform Act of 1995 (PSLRA)

127 S. Ct. 2499, 2504 (2007) (internal citations omitted).  Defendant, in this case, now argues that such a litigation, which fundamentally seeks to regulate damages provisions, effectively occupies the entire field of private securities litigation.

Tellingly, Plaintiff cites absolutely no provision within this statute, case law, regulation or congressional statement to support its broad interpretation that the PSLRA overrides or otherwise preempts the well-settled rule that an SRO can make and apply internal rules to self-regulate their members subject to the oversight of the United States Securities and Exchange Commission.  15 U.S.C. § 78s.  To adopt such an interpretation would effectively nullify this statutory principle.  See Rodriguez v. U.S., 480 U.S. 522, 524, 107 S. Ct. 1391, 1392 (1987) (noting that repeals by implication are not favored and will not be found unless there is an "irreconcilable conflict" between the statutes).  Absent such an irreconcilable conflict between the statutes or an express statement by Congress supporting Plaintiff's far-reaching logic, the Court dismisses this argument on its merits.

all of the elements of collateral estoppel have clearly been satisfied, the Court dismisses the entirety of Plaintiff's Complaint with prejudice.

### C.  Motion for Temporary Restraining Order and Preliminary Injunction

Given the above ruling, Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction must necessarily fail.  As previously set forth, Plaintiff's motion seeks an injunction staying PHLX's attempt to institute administrative proceedings, before the Special Committee to Review Delinquency and Payments, until the conclusion of the pending civil action before this Court.  In considering the issuance of a preliminary injunction under Federal Rule of Civil Procedure 65, a court must balance: (1) the likelihood that the moving party will prevail on the merits at final hearing; (2) the extent to which the moving party will suffer irreparable injury in the absence of relief; (3) the extent to which the nonmoving party will suffer irreparable injury if the preliminary injunction is issued; and (4) the public interest.  F.A. Davis v. Kluwer Health, Inc., 413 F. Supp. 2d 507, 510 (E.D. Pa. 2005).  In light of the Court's foregoing discussion, Plaintiff cannot show a likelihood of success on the merits of its case.  Accordingly, the Court denies this motion.

### III.  CONCLUSION

In sum, the Court finds that Plaintiff PennMont has fully and fairly litigated the pertinent issues set forth in its Complaint before another judge in this district.  The decision of that judge deeming the issues meritless works a binding and preclusive effect, under the principle of collateral estoppel, on the matter now before the Court.  Accordingly, we dismiss the Complaint and deny Plaintiff's request for a preliminary injunction and temporary restraining order.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PENNMONT SECURITIES, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO. 08-2671 |
| JOHN WALLACE, et al. | : | |
| | : | |
| Defendants. | : | |

**ORDER**

**AND NOW**, this 16th day of *September*, 2008, upon consideration of Defendants Philadelphia Stock Exchange, Inc. (the "Exchange" or "PHLX"), Meyer [Sandy] Frucher and John Wallace's Motion to Dismiss Plaintiff's Complaint (Docket No. 6), the Response of Plaintiff PennMont Securities ("PennMont") (Docket No. 8) and Defendants' Reply Brief (Docket No. 9), as well as Plaintiff's Motion for a Temporary Restraining Order and a Preliminary Injunction (Docket No. 7), Defendants' Response thereto, (Docket No. 9) and Plaintiff's Reply (Doc. No. 11), it is hereby **ORDERED** as follows:

1. Defendants' Motion to Dismiss is **GRANTED** and Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**; and

2. Plaintiff's Motion for a Temporary Restraining Order and a Preliminary Injunction is **DENIED**.

It is so **ORDERED**.

BY THE COURT:

*s/ Ronald L. Buckwalter*
RONALD L. BUCKWALTER, S.J.